Matthew Hellman on behalf of Appellant Marriott At the heart of this case is a fundamental mismatch between the alleged conduct and the alleged harm. Plaintiffs seek to certify classes arising out of a data breach, but they're not bringing identity theft claims because discovery disproved those claims for the class. That led plaintiffs to make a late switch to an overpayment theory, but every one of the would-be plaintiffs who supposedly overpaid agreed not to pursue class relief. And even if they could pursue class relief, there's no way to tell who overpaid because without millions of mini-trials, nor is there any way to tell how much they overpaid because plaintiff's damages model is entirely dependent on an improbable assumption that their expert never tested and our expert showed was false. Is there any case that has suggested that in a data breach overpayment was a theory? In other words, curiously, neither side cited our Beck case. We cited a few years back that it was a data breach case and absent the idea that somebody had to keep monitoring and reading and checking and so forth, we said it was not injury. Correct. It created standing and you needed to have an actual somebody using it, using the credit card or using the information. And so it seemed to me that case, I haven't looked at it that closely, but might preclude this overpayment theory, which I have a difficult time understanding. The reason I have a difficult time standing, I would expect that immediately after the disclosure of the breach in 2018, the prices of Marriott would have to drop its prices if the public were thought that they were harmed by this. But I saw no claim or suggestion that that happened. I couldn't agree more, Your Honor, both with that theoretical point and the facts of this case, which show that 90 percent of the would be overpayments were reimbursed in this case. You know, this court has talked many times about classes that have a large number of uninjured members. But you use the word overpayment. You pay $100 for a hotel room, actually probably more like $400. But for a hotel room and somebody comes in and says, oh, the furniture in that room wasn't as represented. It's not luxury furniture. It's cheap furniture we bought on the off market. And the question is, have they been injured as recognized in the law? And the answer might be developed by some kind of market study that says people will not rent that room for $400. They'll only rent it for $300 because it's got cheap furniture. And but in this case, it's a privacy issue. We agree to keep your data private and there's a breach. And so now the allegation is, well, we wouldn't have paid the $400 with the fact that a breach occurred. We'll pay less. But there's no claim of that and there's no evidence of that. Everything I see, even under Prince's model, is they're trying to suggest that the data has independent value of some kind because it can be bought and sold, which, of course, the district court found that there was no basis for going forward under that damages theory. And your honor, I very much agree. This is a to call it a novel theory is maybe to give it too much credit. And particularly on how it comes to this court, you talk about Dr. Prince's model. Doctor, you know, this is an inappropriate theory because look how Dr. Prince tried to measure this would be overpayment. Dr. Prince was the plaintiff's expert. Correct, your honor. And this is our third point, but I'm happy to go there if that's where the court has questions to begin. And there was a Dalbert ruling on this. Dalbert. Yes, your honor, as well as a Comcast ruling, because, of course, Comcast is an overlay that applies when you're talking about certification of a class. And your understanding, just so I'm clear, is that under 23 F, we can go beyond the Comcast ruling and also review the Dalbert ruling, because that seems novel also to me. The way I would put it, your honor, is Rule 23 F allows you to assess the class certification ruling and you don't get class certification unless you satisfy Comcast. Comcast, in turn, requires a rigorous assessment of whether the assumptions are reasonable, not speculative in order to put forth a damages model that's capable of showing class damages. This model decidedly is not. And if I could, I'll just. So just so I'm clear, yes, we can review the Dalbert ruling. Well, the courts brought in his Dalbert. You don't seem to be answering her question. Yes. Yes, your honor. In the sense that the Comcast rule, Rule 23 certification order here incorporated. Right. I would have thought that what we could review was that we would sort of take the model as the district court credited it and then see whether under Comcast, you know, it's key to the right theory of liability and whether the district court reasonably decided that using this model would be would allow for class wide measurements. Yes, it would require some individual inputs, but more or less it's a class wide measurement. But you don't think we sort of take the model as the district court credited it as our starting point? I don't think you do that, your honor, because you have an independent obligation to to determine whether or not I was the one that caused the problem when I raised it earlier because you had other issues about the ability to identify class members. I was trying to get to a more fundamental question of whether they are standing for these large group that is unable to show or has not been alleged to show injury in the form of some kind of identity theft or something like that. But correct, your honor, and and and if ever there were a poor case for overpayment, if it could be a theory, it is not it is this one because 90 percent of the states here were reimbursed. So we're not even talking about overpayment. So you really do have people are not in the class. Right. So I thought the class was narrowed to only people who weren't reimbursed. The that is and that is the problem because you think that that makes an ascertain ability. Can I ask you about class action waivers, because I understood that to be your first argument. And it does seem like it is a sort of clean legal argument where the pieces aren't still moving as compared to some of the other things we're being asked to look at. So I have sort of thought about that one a lot. And I agree with you that it does appear that district courts routinely do what you say they should do, which is decide the waiver issue before certification. But what I have not been able to find and tell me if it's out there is, is there any authority saying you have to do it that way or anyone decertifying a class because it didn't happen in that order? Or is it just that this has become sort of like a customary way for district courts to treat it? So. There's, as you say, a lot of authority dealing with this at the class search stage to do it, I'm not aware of a specific case that says it was error. Generally, or it's always error to wait, but in this case where you have an MDL, there's no point in waiting any case involving these sets of facts, these allegations. I thought the class was. That had the class waiver. Was a very limited part of the hundred and thirty three million. Potential class members, they were the ones that that the hardwood or starwood or whatever was hotels who were members of their select guest program or something that had that language that you quote, that's right, that was the class waiver. So you didn't know who was who had the or potentially would have the waiver until the judge told you what he was going to do as to the inclusion of the class. That is 100 percent correct. Yeah, you got it right. So and so he and he has not ruled on the class waiver. No, that's right. He seemed to think you're one of us. Are you appealing something he had ruled on? We don't normally do that. You got to lose first. What we are asking, what we are appealing in the first instance is his delay of the ruling, the delay of the ruling, his decision, which you found a notice of appeal or something. You got it up here. We did, but the thing that we found a petition for appeal and you regret it. You got this. This is an interlocutory. It is. That's right. Your honor. One of the things we ask for in this interlocutory appeal is the resolution of a class waiver issue. Well, but you want us to resolve the class waiver or judge Graham to resolve it? As Judge Harris said, I think this is a clean legal issue that is, but it hasn't been ruled on by the district court. We normally rule on things that the district court has already resolved. We're we're appeal. We're a court of review. And if and if this court were to say, we understand, but you want us to analyze it in the first instance, we'd like you to analyze it in the first instance. If just to take a little other side of that issue, I think that's a legitimate approach. But the question is a 23 F appeal appeals, the certification or non certification of a class. And if the certification depends on whether there's waiver or not and you raise that below and the court didn't address it, it seems to me that if it goes to the certification, we can still address it. Yes, your honor. Because it goes to whether the class should have been certified. That's right. And this is I'm sorry, just so we know, right, because the district court ruled on this, right? The district court said, I don't have to address this now. I'm going to address it at the merits. There's a ruling on that. That's that is that's what you're appealing and that is right. And then that seems like a separate question to me from assuming entirely hypothetically that we were to agree with you that the that the issue needed to be certified. Or as Judge King has alluded to, our normal practice would be to send it back to the district court to make the determination in the first instance. Although what you would like us to do, and I think your colleagues, too, are arguing kind of the merits of that issue. You would like us to address that first, although that would be unusual. It would be unusual, but it's appropriate in this case because, one, both parties have for it. It's a clean legal issue. And the whole point of 23 Act is to get the thing that I thought was a clean legal issue. Just to be clear, I thought it was a clean legal question whether that needed to be determined before the class was certified. I see nothing clean about the underlying question, which seems to turn very much on kind of the fact specific nature of what happened below. And was there a waiver? And then there's enforceability questions. Then I can't even remember all the different questions that have been raised. That doesn't look clean to me. That looks like a big mess. Well, the key facts are straightforward. We raise the defense in our answer when they asked us, what's the basis for invoking a class waiver? We pointed to this very contract. To Judge King's point, they would not tell us what contracts were at issue. And your answer was, what, a year and a half after the complaint was filed? Our answer was, I could get you the date for that, Your Honor. But we answered it. We timely answer a year and a half after the complaints were filed. More than a year after the thing went to the MDL or something. It was what it was. You didn't answer. So that's when you raised it. You raised it in as an affirmative defense in the answer. Correct, Your Honor. I would think if you had a class waiver, you'd raise it the first time you ever met Judge Graham. He wrote you a letter the day they sent it to him from the from the task force. Washington designed it to him and said he was going to talk to the lawyers in a few days or something. You'd be right out front with this thing. But he hasn't ruled on whether there's a waiver on the waiver issue. And he hasn't. I mean, the class waiver. And he hasn't ruled on whether the defensive class waiver was waived. He hadn't ruled on that. So we're wanting us to rule all this stuff. I think both parties. I understand. I agree that I know which side you're on and I know what they want to do. I think I understand. I think if I could say just a few more words about the damages model in this case, because I'm going to ask you one more question about the class. Potential class that this class waiver class action waiver applies to has approximately how many? Of the hundred and thirty three million, how much that reduced by? I believe as certified, this is a 20 million, about 20 million. Yeah, 20 million potential individual lawsuits. Over overpayments. Right. Well, in Maryland, because you haven't claimed that in New York, even though you got that in that thing, too, you haven't said anything about wanting to go back to New York. You want to stay in Maryland because that's where your headquarters is. So under New York law, which governs the class action waiver and really any potentially applicable law, these waivers are enforceable. And I take care. And what the law says in this area is it's fine to it's acceptable to channel these claims to arbitration. And it's surely if it's acceptable to channel them to arbitration, which could be in any particular form, you could have an arbitral agreement that specifies all sorts of things. It's appropriate to have them also go to the judicial system. Small claims court, for example, is a reasonable way of doing this. But if I could say just a word or two more about the courts. I'm so sorry. I just have one more question about this waiver thing. So sort of. There is no case law saying the district court, a district court has to do this before certification. And you were about to tell me why. Nevertheless, that really has to be the rule. And why is that? It has to be the rule because Rule 23 isn't satisfied in a case like this where Rule 23 A asks, is this the kind of suit where someone may sue as a class? They may not if they've agreed not to. It asks whether or not a class action is the superior vehicle for bringing the suit. It isn't if they've agreed not to. It's asked if the representative of the class representative can bring claims on behalf of the members of the class. That representative cannot if he or she has agreed to waive class procedures. So this is we treat this as a Rule 23 question. And on top of the fact that class action waivers are enforceable. And I do think it's cleanly teed up for your honor for those reasons. I have a larger picture question. The complaint. Alleges a breach involving 500 million people. Yes. And all 50 states. Yes. This action has gone forward with a sample of states and with a sample of issues. Correct. So the question I have is, how do we Rule 23 require some form of manageability assessment? And I mean, what we're talking about now is a group of people. Who may or may not have been injured by this, who may or may not care. But we involve 500 million people. And because we can't handle that many, we're handling fragments of that, which is going to distort the assessment under 23. How is it manageability? One of the criteria that has to be assessed. Yes, your honor. And that's that is correct. By the way, it's 500 million stays, not 500 million people. But I take your point. 500 million what? Stays. Hotel stays. OK, so obviously. Sure. Sure. Sure. But stays. Stays overnight. Yeah. Agreements. Agreements. A hundred and eighty million people. I think that's how I read that somewhere. Yeah. Eighty three million. Yeah. But they're down to 20 million. Right. Because we had a bellwether process where which. And the 20 million are in four states. Is that right? Correct. Your honor. Yes. And everyone agreed to this bellwether process. Right. That's not disputed or. That's right. Agreed to the bellwether process. They come forward with claims. The five claims they think are best amenable for a resolution to get this massive claims going in the right direction in terms of some answers. We came up with five for ourselves. And when that process shook out, all they had is this overpayment theory. Novel and unsupported. And on the substance of that overpayment theory, they can't because this is such a large class, the way they've tried to set it up. They've been forced to assume that hotel prices travel together no matter what. Give me any day, any year. The relationship between the hotel prices will always be the same. What Dr. Prince call that theory? Co-movement. Co-movement, your honor. Co-movement. Co-movement. Yes. And I would just. You had a name for it. You did have a name for it. Just think about it this way. If this were a single plaintiff lawsuit, someone claiming an overpayment charge for a stay in 2016 and the way the plaintiff said is, I can show you how much I overpaid. I'll take a different kind of room on a different rate from the Marriott four years ago and look at it compared to its competitor prices. That's all I'm going to do. I'll just take the four year ago price for the for a suite instead of a double room or whatever. And that will let me figure out the overpayment in the in the current day. That is what this theory is. Times 20 million. And the district court seemed to believe that, you know, nobody addressed on this theory is probably the most troubling part for me is the theory, which has never been done in any case I can see. And it seems to me it's almost looking for the problem. But if you read Clapper and our decision in Beck, you find that it's almost has to be rejected as a matter of law. I'll ask, I'll ask your counterpart, but even if we would be very happy if you did that, but even if the court doesn't go that far, what did you kind of did you ask us to do that in your brief? We did not. We did not say overpayment could never be a theory, but we did say that you are changing your position, then I'm agreeing with Judge Niemeyer, though, you're changing your position. I'm adding that to my position. I'll tell you one thing that I thought about this case after studying on it. So I'm going to prepare for this thing. It's a lawyer's paradise. Yes, well, having lived in it, your honor, we can compare notes, but the the the point I want to make is that even if the court is not as as willing, not interested in deciding that question for all time, what it certainly should do is that on this record where the overpayment is a de minimis, effectively 10 percent of the of the class and the method of proving the overpayment relies on this. Obviously, flawed theory without any support, where our expert went through and just went market by market and said, do these prices co-move? No, they do not. When marriott prices go up, other prices go down. When Marriott prices didn't judge Graham, hire an economist and everything. And there was a long hearing. And I mean, I have to say I have I'm no I am not an economist and I did not hire one to help me with this case. So I am I will I'm very strong. I have questions about the degree to which we can reach that in the first place under twenty three F. And on top of that, I got to tell you, like a very strong instinct to defer to the extremely thorough district court judge and then the economist he hired. I'll answer those questions starting with the last one. I think you can tell Judge Graham this is a big case. It was a complicated case. He did ask for help, but he went wrong. And you can see it on the face of the opinion, because in his certification opinion, he says, I can go forward with this because Dr. Prince tested his co-movement theory. Dr. Prince did not test his co-movement theory. That's just a factually incorrect statement. He ran his model assuming co-movement was true. So I, too, when I came to this case, said this is a long opinion. It seems like people spent a lot of time with it. No doubt that that happened, but that's just not correct. And then when you look at what the record is remarkably clean on this point, when you look at Dr. Prince, he didn't try to say that he tested his theory because he didn't. He admitted that he did not. Instead, he just assumed it to be the case. There's only one expert in this case who tested it, and she decisively showed it was not correct. And Comcast does require a rigorous assessment. And with respect to the ordering of the arguments, I don't think this court should say I don't think it's consistent with Comcast to say that if a court makes a Daubert ruling and then says, because I find things are reasonable, it passes Comcast. That insulates that turns Comcast into a dead letter, at least wherever expert testimony is considered in the Daubert basis going forward. Comcast is an overlay for rule 20. Well, I thought, no, I thought that even if you take, tell me if I'm wrong, even if you take sort of a given the Daubert ruling, there are still questions here that the district court did examine about, well, is it really sufficiently class wide? Because you have to put in all these individual inputs. And at some point, the individual parts of the calculation might start to overwhelm, you know, the commonality, in which case he said, I will reconsider all of this, which is why I find this kind of frustrating as a moving target. But but that seemed to me to be an entirely separate Comcast inquiry that would happen whether or not you can redo the Daubert thing on 23 F. Right. So I think the way to think about this is Comcast itself says it's not enough that the model gives you class wide damages because otherwise that would reduce the I could come up with any model that gives class wide damages. Right. I could say if your name starts with a fifty dollars, it'd be a hundred. So that would yield class wide damages. But as this court has said, a new court for a Comcast opinion, the model has to be based on non-speculative, reasonable assumptions. So that now we're asking, is this model based on reasonable, non-speculative assumptions? I've got a fair number of cases I can't think of something that's less reasonable and more speculative and in fact disproven than the assumption that's needed for this. And then to your point that he said, well, it won't take that many runs of the model and therefore it's amenable to class treatment. He does say that. But the key that makes that car run is co-movement. If co-movement isn't true, then even Dr. Prince acknowledges he's back to doing millions upon millions of calculations with millions and millions of pieces of data he can't get. No, no one has that information. And even if you had it, it would the individual questions would predominate to the extreme. All right, I think I'll go ahead. Do you agree with me that all the issues you raised in your brief, we reviewed this interlocutory appeal that was your position when you came in here for abuse of discretion? That is the standard of review, but this court has made clear that the misapplication of the 23 F factors in law is an abuse of discretion. And Comcast's error of law is an abuse of discretion. But we review everything you challenge in this interlocutory appeal for abuse of discretion. That is correct, Your Honor, but cases like Comcast bothers me, I go in. Well, I just want to say that the way that it cashes out in practice is cases like Comcast that say you need to do make sure that this rigorous assessment on the basis of reasonable non-speculative assumptions was satisfied. Otherwise, Rule 23 is not and reversal is appropriate. All right, thank you, Mr. Thank you, Your Honor. I will hear Mr. Anderson. Thank you, and may it please the court, Devin Anderson, on behalf of Accenture, addressing certification of the Rule 23 C4 issue classes for the negligence claims, which are the only classes and the only claims against my client. After this case made its way through fact and expert discovery, Plaintiff had just one and only one theory of injury as to Accenture, that they had somehow lost revenue from hypothetical sales of their data as a result of the data breach. Can I ask a question? Yeah, I was. I understood that that was their only theory for a class wide. Injury and damages, but I thought. At the motion to dismiss stage, they found that the class reps, at least for the Bellwether plaintiffs, had other forms of had sufficiently alleged for that stage in the proceedings, other forms of injury as well, but they were individualized. That's correct. So at the motion to dismiss stage, the district court had found that plaintiffs had adequately pleaded certain other theories of injury related to identity theft and identity theft. Correct. Correct. So identity theft and sort of related harms like mitigation costs. But when push came to shove and we got the case through fact and expert discovery and to the point where plaintiffs were going to come forward with their class theories as to my client, they didn't have overpayment because Accenture. Right. But you're just talking about the class theories now. I'm talking about the class theory. Okay. Not the individualized. There's still individualized injuries floating out there. But the only class wide theory of injury over on the negligence side was this overvalued thing. The lost market value, the lost market value. And so the district court rejected that district court rejected it as a matter of fact law and under Rule 702. And then the district court proceeded to say that the damages class action as to the negligence claims failed predominance because fact of injury, causation, damages, et cetera, would overwhelm any common questions. But the district court erred when he decided to nevertheless certify a class action after having concluded that there was no class wide injury. Whether you look at that through the lens of Rule 23 commonality, predominance, superiority or Article 3, there's nothing to recommend about a class action at that point. Once the district court has reached that conclusion as a matter of rule, Rule 23 and the Walmart v. Dukes case, the Supreme Court held that commonality requires that the plaintiff demonstrate that the class suffered the same injury. And that wasn't a new principle. It goes all the way back to the Supreme Court's decision in the Schlesinger case where the court recognized you need a shared injury. That's the glue that holds the class together. And so once the district court here as to the negligence claims, which, again, are the only claims against my client, found that there was no shared injury, that there was no common injury, the analysis should have stopped. I think that's the clear implication. But in Walmart, wasn't Walmart like a full damages class? I mean, I understand you don't think that this is a permissible move for the district court at that point, but he didn't certify that. He said, OK, I won't certify that. You don't have a shared injury. I'm only going to certify the things that you do have in common. And from the district court's opinion, it sounds at least as though nobody was really denying that the questions of breach and duty are common questions. Well, there's two responses on that, Your Honor. Yeah. So on Walmart versus Dukes, I mean, I think Walmart versus Dukes was actually a B-2 class. It was an adjunctive relief slash back pay situation. They didn't just do specific elements that they had in common. That's correct. That's correct. That's not what the plaintiffs were trying to do in Walmart. But I don't think Rule 23 C-4 provides an end run around the fundamental commonality principle that Walmart stands for. Right. I mean, I feel like this kind of collapses pretty fast into your argument that, look, you just can't do this under Rule 23, certify issue classes on less than full liability. I think that's right. And I would say it may get even narrower than that, Judge Harris, because I think you can't do that in a circumstance like this, where the district court has already found that the one theory of common harm just doesn't work. That's not a theory of common harm that applies. If he thought there was a theory of common harm, he wouldn't have done this, right? And he would have just certified the class. Well, if he had found a theory of common harm, then I think we wouldn't. There may be other issues. I don't know where we would be on that. But by finding that there wasn't a common theory of harm, I do think, and I want to make sure, I know I'm a little over time, but I want to hit Article 3 issues that stem from the way that the court has set this up. So I think a common injury is precisely what sort of turns the abstract legal question about my client's obligations into a concrete case or controversy. If there's not a common harm stemming out of that. Why does it, so is it, is it okay if I, I know you're over time. Yeah, so because I really didn't understand the Article 3 point. The district court, and this goes back to my first question, he did determine that the class reps have adequately alleged individualized injuries, in fact, the mitigation costs and the identity theft. And then he said, consistent with Lujan, that the defendants will have another chance to contest that under the summary judgment standard, you know, at the right, demand the right level of proof appropriate for summary judgment at summary judgment. And we know, because these are just issue classes, that no class member is going to recover damages without first establishing injury, in fact, in a separate proceeding. So I don't see the Article 2 problem unless, are you saying that every single class member has to have suffered injury, in fact, to certify the class? I don't think that the court needs to reach the question, so I'm going to work backwards on your questions just here. So I think, I don't think the court needs to reach the question as to whether at the Rule 23 juncture, sort of the question that was left open in TransUnion, whether the class has to prove standing at that point. But I do think there needs to be a mechanism, an opportunity to contest the standing of the class when you have a class claim that's pending against you. And that's precisely what we're not allowed to do. So when the district court, if you don't mind, Judge Harris, I think the district court's opinion that you were referencing earlier was talking about the overpayment theory, which was a theory of harm that was certified against- You mean where he says you can come back on summary judgment? I believe he's talking, I believe it's talking about the overpayment theory. It's a standalone section called standing. Right. Here's how I'm dealing with standing. Right now, I'm going with what I said at the motion to dismiss, and of course, at summary judgment, you think he's not going to allow a test of the class reps for standing at summary judgment? Well, I don't think the question is, is he going to allow a test of the class reps? We now have class claims. And I think under TransUnion, at the end of the day, every class member has to have standing. Yeah. And before they get any money, they're going to have to bring a whole separate lawsuit. So I guess at that point you can challenge standing. But at that point, we'll have had a binding class determination, right? So Judge, I think if you play the process out, at least in my mind, the Article III problems become evident. So let's play it out. Let's say either at summary judgment or in a jury trial, a jury finds that Accenture owed a duty to this class and breached that duty. That determination purports to bind tens of millions, maybe 100 millions of class members as well as my client. But we're only ever going to address whether that purported legal infraction resulted in harm to individuals if they show up for this second trial. And plaintiffs themselves have said, given sort of the extremely small dollar amount that could be attributed to this, only lunatics are going to ever show up and actually do an individual trial, especially here where we've got significant and complex questions of injury and causation and damages remain. So we're never going to have an up or down determination as to whether the class has standing. And if my client were to win in this issue class proceeding, then standing won't and can't have ever been adjudicated for anybody at all. Either way. Can I ask one more question? It's not related to standing. I'm sorry. You had so little time. Before you sit down, I have a question that is not addressed in the briefing. It's about superiority. And I'm trying to tie all of the pieces of this case together. There's this question that your colleague argued about the class action waivers. If hypothetically, I thought that the district court should have determined the waiver question before the class was certified. And so I. So that's a problem now with the Meria class certifications. It seemed to me that the district court superiority analysis rested entirely on the existence of the Meria classes, because as you point out in your brief, like once you stripped a class down to these relatively small things it has in common and left so much for the individualized trials, it's not really obvious anymore that this is a superior method and it's an efficient method. So the district court relied very heavily on the existence of the Meria classes. To show superiority. So my question is. If for if we thought there were if I thought hypothetically there were a problem with the Meria classes because of the class action waiver, would it follow that we'd have to send back the superiority question to. So I think that's certainly permissible route, because I agree with your characterization, Judge Harris, that the district court's superiority analysis was like, well, we're doing the Marriott thing anyway, and so why not resolve a couple of interesting questions as to Accenture's obligations? So I think that superiority analysis wouldn't work anymore if the court were to reverse or vacate the certification order as to Marriott. But I think the court can go ahead and say, look, in a circumstance like this, it's not just that the class procedure against my client won't resolve liability, although many district courts, including many within the circuit, have recognized that, look, if we can't carry the football at least all the way through on liability, this is not a superior way of proceeding, but it's that the significance and complexity of the issues that remain for determination, this is not some sort of show up at the end of the game with a claims form process after liability has been adjudicated and there's a class-wide damages figure. As the district court recognized, there's going to be significant and complex legal, factual, and expert issues that would have to be presented in any one of these potentially tens of millions of falls-on cases that, in order to actually produce anything resembling a liability determination. And so for these reasons, unless the court has any other questions, we would ask that the court reverse the certification of the C-4 classes as well. I'll reserve the rest of my time. All right. Thank you, Mr. Anderson. All right. Ms. Keller? Yes. Good morning, Your Honors, and may it please the court. My name is Amy Keller, and I represent the plaintiff's appellees in this case. I want to begin by acknowledging that there are three things that are completely unrefuted in the record. Marriott and Accenture had wholly deficient data security. Neither one of them rebutted our expert report on that issue, and indeed, our expert report even discussed the increased likelihood of harm and the additional risks that the class would face as a result of the data breach. Again, the report is unrebutted. You know, it's curious that you make that claim and never cited Beck, and we addressed that precise issue. And we basically said, and I think we relied on Clapper, too, but I can't remember, but the notion that somebody, when there's a data breach, I've been the subject, I guess, of three or four of them, I guess. I don't know. I have not yet been affected. And under Beck, I have not been injured, and those cases do not go forward. And our circuit's not alone on that. And so the notion that when we have a large data breach, that there's automatically going to be damage is unsustainable. It's got to be, there's got to be some theory of damage, and the damage theory is that the data breach leads to use of the data in some fashion that hurts the person. And while you have a plaintiff that's alleged to that, it seems to me that's fine, but for the class, class-wide treatment, the only theory is this overpayment theory, as far as I can tell. Well, Your Honor, after the court decided Beck, it decided Hutton. Beck was a stolen laptop case. Yeah. Hutton talks about what happens when hackers target highly sensitive personal information and how that information can be misused. Yes. As you state, in the record, it shows that plaintiffs actually experienced fraud and identity theft. Okay? And then we also have, in the record, the expert report of Mary France, which talks about what happens to the class when hackers target highly sensitive personal information and what damages that class can sustain as a result of their injuries, as a result of hackers targeting them. But the issue is not what they can sustain. It's what they have sustained. In other words, injury, you don't bring torts on the damage actions on the prospect of being damaged. You have to allege you have been damaged, injured. And there are other forms of injuries in this case, Your Honor, which the court discussed. Well, I'm talking about the class. We're just talking about the class, and the class injury is overpayment. That's the only injury. I say it's left. But we also have presently pending before the district court, where the district court has granted us additional discovery, where the C4 class can become a B3 class, discovery on the value of personal information. Yes, Dr. Prince had two damages theories that he was examining. Not only overpayment, right, which is what the difference you would have paid had you known that the hotel security was inadequate, but also the valuation of personal information, the value that you lost as a result of this data reach. Now, the district court did certify a C4 class on these issues, but the district court also reserved judgment because we can still present a damages model and present it for B3 certification later. But the idea, all this perspective, everything's been postponed, but we have determinations that have to be made at the present time. If you had a 12B6, and you said, oh, at trial, I'm going to demonstrate damages, or it could happen in the future, or these other determinations, waiver, I'll determine them in the future. A 12B6 says, what is the status now? And a class certification requires a similar type of notion that it's a very unusual process, and it's a very expensive process, and it's very cumbersome to the judicial system. And it seems to me that there ought to be a rigorous analysis under Rule 23, all the way to get there. And the notion that we have a changing theory of damages, we don't even know if anybody's been damaged under this theory because they haven't yet tested the full model. I mean, this, I don't know where this leads, but it's a bunch of, a certification may just be too early. Maybe we should be having this go forward, having a mini trial on damage, have somebody decide whether that is a legitimate theory, but to raise, for a first time, this huge litigation, a theory that's never been recognized in any court, and is not fully developed even in itself, they still have to run analyses, they have to still demonstrate this co-movement presumption, and so forth. So, it seems that we got a little backwards, that's what I, maybe not. Sure, Your Honor, and that's why plaintiffs did not seek a review under 23F. We do think that it's a little too early. I know, but the certification has occurred, and 23F kicks in once there's a certification order. Of course, and to address your questions, okay, yes, Dr. Prince had two damages theories, and you were asking about how certain damages theory hasn't been recognized, but overpayment is an accepted damages methodology for a breach of contract claim. This is just a breach of contract claim, so saying that overpayment is somehow not an accepted theory is actually incorrect. As to the valuation of personal property... Well, see, it's overpayment is if you overpay for the room, or you overpay for an automobile, because something wasn't there that was promised. It's got to be material, it's got to be meaningful. So the question is, the furniture or the carpeting is not up to snuff, and you learn later that the hotel misrepresented the level of that, yet the hotel continues to get the fees for that hotel. People who live there come there and repeat themselves. You got to demonstrate actual injury. It's so collateral, the promise of privacy is sure, it's a service. Everybody wants to have privacy, with every hotel and all your data, whenever you give data to anybody, but the question is, is the price of the hotel room in any way geared to that privacy promise, and the breach of the privacy promise? And I'm glad you brought that up, Your Honor, because that may conflate injury with damages. We know that at the point every single class member made a hotel reservation, they were injured because they were not given the data security that was promised to them. So in this respect, we think that Judge Grimm's class certification decision is actually a little narrow when he certified the subclass, but that does not take away from the fact that he should be entitled deference. Deference, which you, Judge Niermeyer, said in Zetia, district court judges should be afforded. Let's walk through what Judge Grimm did. He had a full-day confab with all of the party's experts. He hired his own economist, for which the parties paid, to help him analyze the expert report and the theory of damages. He even hired a special master to help him deal with some of the discovery issues that were going to lead into some of these damages models. So when we talk about deference given to the district court, it's very difficult to say that Judge Grimm abused his discretion in finding that this damages methodology was supported by the record. Now, I want to turn to a couple of other issues that have been raised by Marriott's and Elstowitz-Century argument. We brought up the issue of the choice of law and venue provision in the Marriott terms and conditions. Now, that choice of law and venue provision provided that these cases had to be tried individually, not as a class action, in New York state court or federal court, and based on New York law. And since the inception of this case, we have been treating these claims collectively as a class action. We engaged in a bellwether process where the parties selected claims that would proceed forward, not just at the motion-to-dismiss phase, but at the class certification phase. Marriott did not bring up the choice of law and venue clause. That's a bellwether process. I'm sorry to interrupt you. So, as I understand it, I just have like an outline in my head, this is your argument for why the class action waivers were waived. Correct. Okay. You are not arguing in your brief, as far as I can tell, there's no actual sort of substantive argument that the district court shouldn't have addressed this question before it certified the class. Like, you say it in a phrase, but there's no argument. So, you're, as far as I can tell, conceding the district court should have addressed this before it certified the class, and moving on to explain why, when the district court addressed it, it should have found, as it suggested, that this was waived. But you are conceding the district court, or at least you are not, tell me, what is your position on did the district court have to make this determination before it certified the class? Normally, these issues need to be determined by the district court, especially here, because Judge Grimm was the judge that has been overseeing this litigation for the past three years. Now, he found that they likely did waive it, because they engaged in all this litigation activity before even bringing it up. And when they brought it up, it was in a boilerplate, it was in a boilerplate. That's a strange argument, you know, because the federal rules of procedure say that waiver has to be raised in your answer as an affirmative defense. That's the first requirement. You can raise it in a 12v6, but the pleading rules allow you to raise it and preserve it by an affirmative defense in the answer, and they did raise it in the answer. And the district court didn't talk about it being waived. The district court had it before it, and just chose not to decide it at this point. To me, and I'm only speaking for myself, but I'm an old proceduralist, and I can tell you that would set the world on fire if we started saying somebody raised an affirmative defense, the district court addressed it, and now it was deemed waived because it wasn't raised earlier in the proceedings. It just doesn't fly. Well, while that may be true for other cases, when you look at whether a party waived a litigation, and if it was inconsistent, you'd have to have a judicial waiver, and they would have to say, we're no longer raising it, and there's a lot of cases on that type of thing. Otherwise, we don't impute that people waive things when they affirmatively raised them in the pleadings as dictated by the rules. But the district court importantly found that they likely did waive, and to Judge Harris's point, the district court is the answer. You can make that finding, and that could be reviewed. You're talking about a reference in a footnote? Yes, the reference in the footnote. Page 25 or something? 565. What is it? Joint Appendix, page 565. Plaintiff's raised a strong argument that defendants have waived their right to enforce the class action. Page 25 of his opinion. Yes. He said they raised a strong argument. Correct. He didn't say they waived anything. That is correct, Your Honor. You can have a good argument and lose it. I'm sorry, Your Honor. A lot of people, a lot of parties come through here with cases with good arguments. They end up losing. Sure, Your Honor. So the fact that the judge thought he had a decent argument, or a strong argument, I don't think supports a contention now that Judge Grimm ruled that he waived, that they waived. Well, important, back up to my... As Judge DeMar said, they raised it in their answer. They raised it in their answer, but again, Judge Grimm, who is the one closest to the litigation, who's been overseeing this case for the past three years, said we waived a good argument, or we raised a good argument, and he has not yet decided it. The district court, in the first instance, is typically the entity that decides these issues. I understand that, and he didn't decide it, but in that same footnote, two-thirds of the way down, he says, therefore, the court may address the class action waiver defense, dash, as it will all affirmative defense, dash, at the merits stage of the litigation. Correct. He decided that he was not going to address the waiver. Correct. The waiver, the class action waiver. Which is why it was... And you all want us to decide it now. No, Your Honor. I thought when they said you, everybody agreed at least we did. That's incorrect, Your Honor. All right. They're the only ones... So, you're speaking for yourself. But what do you want us to do? That's good. That's the way the adversary system works. Well, what do you want us to do? So, you agree the district court should have made this determination? Yeah. And you don't think we should make it now, so you want us to vacate and send it back for the district court to make this determination? Right, because you can... Okay. So, you're asking for a revamp? Okay. Rather than the permits? No, we think that the district court did not abuse its discretion in certifying any of these classes. So, you want us to... So, what do you want us to do today? We want you to affirm, and we want you to remand for the case... So, affirm and remand, because it's an interlocutory appeal. Correct. Affirm and remand for further proceedings. Correct. But I don't understand it. I apologize, Judge Harris, if I was confused by your question. Okay. I thought your position was the district court did need to make this determination before it certified the class. And I apologize. That's not your position. Not before certification. Okay. How come there's nothing in your brief that explains why the district court didn't have to make this determination in the first instance? I don't see that argument in your brief. And normally, we would say, if you don't argue it in your brief, you have waived it. Fair enough, Your Honor. So, the district court does not... I'm sorry. The district court did not need to determine this prior to class certification, because all of the issues are same in front of the class. Right? So, we look at the contracts. The contracts are the same. The issues can be decided as the case proceeds. Okay. But I... I... I just... I have two questions about that. Okay. The first one is, since you didn't make that argument in your brief, why should I not consider it waived? Because, Your Honor, when you look at whether or not the district court abused its discretion, which is why... I understand. But normally, you're supposed to make the argument in your brief, and you don't. There's, like, two words saying district court management of the docket, and then lots and lots of pages about the merits of the class action waiver issue, and I am concerned about that. And I guess my second question would be, why on earth would the district court not have to do this before he certifies the class? I don't understand that. If the point of the class action waiver, from Mariette's perspective, is it's not that, well, we got this waiver, so phew. After we litigate a gigantic class action to summary judgment, we will win. It's that we're not going to have to litigate a gigantic class action, and if you don't make the determination before certification, how is this waiver of any use to Mariette? And I appreciate that, Your Honor. I think it's because all of the issues are pretty intertwined, right? Because we argue waiver, right? And because we argue that Mariette has waived, and the district court found that they likely did waive. But our... You're talking about... The term waiver is getting thrown around. I know. You're talking about waiver of the waiver. Yes. Waiver of the choice of law and venue provision. And importantly, like, when you look at the actual record, it's whether or not Mariette acted inconsistently with the choice of law and venue provision. And that is something that the district court is within its discretion to determine. We don't think it needs to be determined prior to certification of the class action. And I do want to note that the very specific language in the choice of law and venue provision says that any disputes arising out of or related to the SPG program or these SPG terms will be handled individually and without class action. If they were supposed to be handled individually and without class action, then why did Mariette engage in the entire bellwether process? And the other note that we make in our brief is whether or not the parties can contract to take away powers from the district court. If the ship had already sailed on Mariette engaging in the bellwether process as part of a class action, the parties cannot then take away power from the district court and tell the district court what it can and cannot do. Just like the parties, as we talk about in our brief, cannot say the Rule 11 doesn't apply to the proceedings. We can't tell the district court whether or not to make certain determinations on established federal rules of civil procedure, and that's one of the arguments that we do make in our brief that I think is very important. Okay, but why doesn't the district court have to certify this before – I'm sorry. Why doesn't the district court have to determine whether these putative class members may bring a class action before he certifies them as a class? Just logically speaking, I'm just not getting it. I understand that, Your Honor. And importantly, Mariette could have moved. I understand you have this waiver issue, and I think it is a complicated question. I do think I understand your arguments on that point. But what I don't get, because again it's not in the brief, is what would be the argument for why this all need not be determined prior to certification? Because on a class-wide basis, Your Honor, we don't think that Mariette has the ability to tell the district court what it can and cannot do pursuant to the actual terms. It's not telling them what to do. It's making an analysis of whether a person qualifies commonality. I mean, if a person has an individual defense – Mariette has an individual defense against somebody and said that you have to decide this in this way in this court, in this venue, and so forth. That would make sense, Your Honor, if the plaintiffs had agreed to something like, I agree not to be a class representative. I agree not to take part in a class action. This says will be handled individually and without class action. Will be handled? Handled by whom? Yeah, well can't that be decided by the district court? Again, and it should be decided by the district court. We don't think it's – You don't want us deciding it. We don't think it's necessary. First of all, we don't think it's necessary. We don't think it's appropriate for this court to decide it in the first instance. But we also think that there's enough in the record that if the court were to determine that waiver happened, there's enough in the record to – Am I wrong that this only applies to the Starwood Special Guests or whatever the thing's called? Yes, the SPG. Okay, so it only applies to the ones that are in this class. Correct. So it's like a chicken and egg. He had to define the class to know who's had the class action waiver. The subclass, Your Honor. Well, the subclass. But the 20 million have a class action waiver. If it had been any broader than that, it would have been – Part of them would have had the class action waiver and part of them wouldn't. Is that right? Correct, Your Honor. This contract provision that you're fighting over. Yes. That includes the class action waiver. Yes. As I understand it, it applies to the Special Guests or whatever they're called of Starwood. That is correct. Before it was bought by – After it was bought by Marriott. Right? Right. And the class period is from 2014 to 2018. But I thought you would argue that would be a reason for him to do it in this – The way he did it, Judge Graham. That he had to identify this Starwood class before he could get to the question of the class action waiver. Or possibly get to it. That's where he puts his footnote, I think, where he has it in his opinion. That footnote 26, as you were talking about. And that is correct, Your Honor, because determining who is governed by the SPG terms and conditions is necessary to determine who would be a member of that subclass. And Judge Harris, I know you frowned your brow when I said subclass. Again, and this all just goes to the fact that this is a very complicated issue. That's the first time that term has been used today, I think. I thought all class members – Aren't all class members members of the SPG program? I thought that Judge Graham did that. He said, to avoid these commonality issues, I'm kicking out everybody who's not a member of this program. The only class members before us have signed this class waiver, right? Correct. After the breach of contract claims, yes. But recall, when I talk about subclass, the reason why I said subclass – Because that's what he certified. The reason why I said subclass is because there's still a broader class that would encompass broader claims. Those are the B3 claims on the valuation of personal information. Which are not in front of us now. No, but that relates to the C4 classes that have been certified because it's our intention to go back to the district court. But as of now, all members of the C4 classes that were certified in this order are members of that Starwood program, right? That is correct. So all the class members currently in classes have signed that class action waiver. Yes, because they are SPG members. And that's 20 million people, is that? Or 5 million? Well, the reason why – well, first of all, Your Honor, we have to rely upon Marriott's representations for that because they refused to give us the database that had all of the stays before the class was certified. So we have information on our named plaintiffs and we're relying upon Marriott's representations as subclass size. That's the 20 million. That's the breach of contract. So currently, based on the reduction to the 4 states or 5 states or whatever and the bellwether issues, we have certifications that cover roughly 20 million people. That's the number we're using. And all of those were part of the Starwood program. That's correct, Your Honor. And I notice that I'm out of time, but I did briefly – you had asked about the bellwether process and about manageability. And I was hoping that I could address that. So as part of the MDL process – and as I understand it, a lot of judges are adopting this now – when you have a large case as part of an MDL, the judges may ask the parties to engage in a bellwether process, picking their strongest claims from certain states so that the briefing before the judge can be narrowed to allow the case to be streamlined and proceed forward quickly. Importantly, a lot of the issues that are decided in the bellwether claims can decide the issues in the other class claims. That's the reason why the parties engage in a negotiation to pick representative claims, right? Because certain claims for state consumer protection laws in Oregon, for example, may decide certain issues with regard to – But my question – I understand your point, and it's well taken. My point was a much broader question, and the question was the whole bellwether process. When you are purporting to represent hundreds of millions, or 180 million or 200 million people or whatever, you need to narrow it down to a few states, representative states, and then representative issues. I don't know how many we have – 13 or 12 representative issues? Well, Your Honor – Bellwether issues. Bellwether issues. So we determined it by claims. Yeah, by claims. And there were 10 claims initially. We lost on a motion to dismiss, I believe, one of those claims. The court did not certify every single one of the bellwether claims. It denied the motion to certify the Michigan class without prejudice as to the loss of valuation. I'm not so interested in that. What I'm interested in is the notion that we have to go through this process in order to manage the case raises a fundamental issue for me as to whether we can have a class action at all. This would be really for the professors to write about, but I can tell you I was chair of the Rules Committee, and we had hearings for about two or three years on class actions. And I heard from all of you on the plaintiff's side, I heard all the defendant's side, I heard all the professors, and the philosophical questions about this management and the size of classes. You know, remember, Costano was, what, 50 million people, and this is much larger. This may be the largest class action I've ever seen. And so the question is, if we have to go through that process, aren't we defeating the class action or violating the class action rule itself in that sense? I mean, the class action rule is not the head. The class action rule is the tail. And the head are the individual plaintiffs who are purporting to represent others who are similarly situated. And so when you think in those terms and you say, we can't handle this unless we narrow it all down. We couldn't handle the 50 states and the 100 and 200 million people claims under all kinds of factual circumstances. We'd have so many subclasses and so forth. My question was, and probably doesn't need an answer from you because maybe this isn't the right place to talk about it, but if we have to go through this process that's going through, this very orderly process and reasonable process from good attorneys on both sides, to narrow it down and to go to bellwether issues and to get samplings, we're basically conceding that otherwise it would be unmanageable. And one of the main things about class actions, it's not legislation for all of society. And that was my question. And it still concerns me. This case raises it more than ever I've seen. So I don't know if it's a place to address it. Sure. And we haven't really briefed the manageability of bellwethers and things like that, but there's ample support for it in the manual for complex litigation. Well, I know, but doesn't make it right. Fair enough, Connor. But we also know that trials can proceed on a narrower set of claims. We just saw the Squiteros v. GM trial proceed forward where there were a limited number of claims and there are still other claims outstanding against GM related to the same defect. We get the sample from, say, for example, Mass Torts where they picked bellwether claims to proceed forward. So this doesn't mean that it's unmanageable. In fact, in Tyson v. Buifeco, the Supreme Court said you can engage in sampling to support class certification claims. I know, but when you're doing sampling, that's a mighty dicey, risky process. Which isn't here, Your Honor. Okay. But importantly, this just goes to the point you made in Zettia, which is the district court should be afforded discretion, because the district court is the one seeing the case in, day out. Judge Graham... Well, he is. But, you know, he kept putting off issues. And some of them, the question is can he put them off? Because you're engaging, you're launching into a huge battle, so to speak. And if it's, in the end, not going to be justified, then you have those enormous expenditures of judicial assets as well as party assets. And so I think the notion that you ought to have a rigorous analysis up front is very meritorious. Now, whether this case is a violation or not, that's one of the questions we have before us. But I raise this. I mean, sure, there can be sampling, but you have to be cautious in sampling. Every time you have a market study in connection with trademarks and so forth, we do sampling. It's done many times, and you can impute. But when you actually have a process, which the only way you can really handle this with sampling, then you have to start asking the questions whether the process allows that in the big picture. Now, you say they're doing it. Fair enough. You'd have to look at each one. But this case is huge. And I appreciate that, Your Honor. But importantly, we have to look at the fact that both parties consented to the bellwether process. So when we talk about an enormous use of resources and everything, which, by the way, has already occurred. The parties already engaged in 18 months of discovery to get to this point and worked with a special master on discovery issues and, again, with the economist that Judge Grimm hired. But importantly, both parties consented to the bellwether process and did not object to the fact that this somehow made the classes unmanageable. But if you're going to go to the bellwether process, then you've got to make it work, which means make the decisions on anything that's material. And to go through a bellwether process and leave open three important, four important matters and say, I'm going to decide those later in some larger context, which could defeat the whole process, defeats the bellwether process. And so I just raise this abstractly, although I must say some of these concerns linger as I read this case. And I'm not sure what an appellate court is supposed to do. I'm not sure what Judge Grimm is supposed to do. Incidentally, you know Judge Grimm's down at Duke now. And do we have a new judge appointed on this? We do, Judge Gallagher. Judge Gallagher, OK. She has made a couple of decisions already with regard to discovery that's pending before the district court, which we've asked to supplement the record on. And of course, Your Honor, these are really tricky questions that are being examined by people that are far smarter than me on the bellwether claims. But it's important that we don't need to. You don't need to self-deprecate. You've demonstrated yourself well. Well, I defer to Judge Grimm on these issues. And I believe that this court should defer to him. I'm going to ask one more question. This follows up the question of Judge Harris. On that class action waiver, did you all ever, you talk about all the cooperation and everything, did the parties ever jointly ask him to finish the job on the applicability of the class action waiver? Because you must have anticipated there was going to be an interlocutory appeal on the certification, that everybody had been better off. If you'd had the resolution of the class action waiver issues before we came up here. Well, I believe, Your Honor, that is what we initially argued as to why the 23F shouldn't be granted. Marriott moved for a 23F before we could do any of these things before the district. I understand. They wanted to come on up. So there was no joint request or effort unilaterally from either side to try to get Judge Graham to resolve that point before the interlocutory appeal got here. That is correct, Your Honor. I don't know. I'm speaking for myself. It would have helped me a lot if that had been resolved. I agree, Your Honor. I just have one more question, and I know we've extended both of you quite a while, but this is a fairly significant matter. Marriott raises the point that Dr. Prince presumed co-movement and had not yet demonstrated it, and his argument rested on his ability to demonstrate that at a later time. What's your take on that? We disagree. That's what I thought you might. Let me hear what you say. Sure. No, we think it's adequately supported in the record that Dr. Prince rigorously demonstrated his damages model. No, not the model. I'm talking about co-movement. He relied on co-movement of pricing among hotels, but he acknowledged he had not yet tested that. He had not demonstrated that yet. But importantly, Your Honor, co-movement, and I'm not an economist. I don't know if there's any economist in the room like the one that Judge Grimm hired to help him with this, but co-movement analyzes the rather unremarkable principle that hotel prices are competitive, right, and that they tend to move together. So if Marriott- He assumed that. He assumed that, and the expert on the opposite side said that's not so because of various conditions and market conditions, some logic. But my question was the argument that Marriott makes is that the model depends on that assumption, which has not yet been demonstrated. And I wonder whether you agree with that. But the model relies upon accepted academic literature. And again, this is an issue- On co-movement? On co-movement. There's got to be some data on that, right? But Dr. Prince not only cited academic literature, but we also have a chart in our appellate brief which tracks the fact that hotel prices generally move together. I cannot recall the page offhand, but there is a chart which we submitted to the district court showing that co-movement is an accepted principle of economics. And again, Dr. Prince, the analysis of his expert report, it was assisted by Judge Grimm because he hired an economist. And we had a full-day expert confab to which this court doesn't have the benefit. Judge Grimm had the benefit of consulting with that economist. And Judge Grimm did not abuse his discretion at the end of the day. It's inappropriate to relitigate this dauber issue on a Rule 23-F appeal. And unless the court has any additional questions, I see that I've well exhausted my time, and I thank the court for its time. Well, thank you. Thank you for your argument. All right, we have a few short rebuttals. Let's start with... I guess we start with Mr. Hellman. Yes, thank you, Your Honor. I will be brief. This is a large case, maybe an unprecedentedly large case, and there are a lot of issues in it, both theoretical and, I would say, expressly argued in the briefs. It would be most helpful and appropriate for this court, which has discretion in the issues that it will address here, to begin with Dr. Prince and the co-movement theory. And I say that because that issue has gone all the way through the process of class certification, and for the reasons I've said before, it was never tested. My friends on the other side said, look at the chart we submitted. The chart is of seven hotels that have no bearing in this case. They're not Marriott Properties or any other hotel at issue in this case. There were charts submitted in this case by the one expert who did test the co-movement assumption. That was our expert, and she showed that for every market at issue, co-movement did not take place. Comcast requires more. You should reverse on the basis of Comcast. Let me take the logic through just of your argument. Your argument is Dr. Prince's theory is not sufficiently tested at this point. It relies on a speculative assumption. Yeah, on a speculative assumption at this point. I'm going to grant you that. His argument would be, I'm going to demonstrate that, and I'll bring data in. But let's say right now it's at that point. What does that lead to in terms of what we should be doing? It leads to reversal. Well, not the general, particularly. What issue does that hit? That issue means that certification was improper because you need to show that your model is adequate to obtain certification. You can't show it afterwards. 23B1? B3? Comcast is born out of the predominance requirement because otherwise common issues don't predominate. And where your model isn't capable of reasonably, on a reliable basis, showing damages, you haven't satisfied predominance. That's line and verse from the Comcast decision. And if I could, there is no future day on which Dr. Prince is going to be able to show co-movement because to do it, as he tried, we actually can look to the past, not to the future on this. His original report said, I will obtain the prices for all of these competitor hotels and run the analysis every time for every stay over four years for every kind of room that's at issue. That data doesn't exist. Marriott doesn't have it. Marriott doesn't have its competitors' prices. He can't get it. And that's why he went to his simplifying assumption, which was a necessary assumption for him, but speculative and unreasonable all the same. And that issue has gone as far as it possibly could at this point. And if Rule 23F exists for anything, and again, we talked about deference to the district court, well, there's also an unusual right of interlocutory appeal, or I should say an avenue for interlocutory appeal. This is the case where the rigorous analysis that Comcast requires is not met. And I think the most useful thing in this aquarium of problems that this case presents, the biggest fish, the one that would be the most helpful to reach, would be the Comcast issue. Yeah. Okay. I think your time's up. Do you have anything else that is important that would help? I just want to say, we believe that the issue of the waiver is squarely teed up, ready for this court, but we'll rest on our breast on that. I think you've heard our position on that, unless the court has questions. All right. Mr. Anderson. The chart here says you have one minute. I'll take that as a challenge, Your Honor. I actually didn't hear very much in defense of the Rule 23 C4 issue classes in the presentation from the other side, so I'll just say this. In Beck v. McDonald, the case that Your Honor was referencing earlier, this court recognized that for someone to have a claim coming out of a data breach, they need to not just say there was a data breach. They have to translate that claim from the alleged negligent act into an actual felt harm. Plaintiffs took a swing at that, as to my client, with this lost revenue of sales theory. The district court rejected that. There is nothing on the table at this point, and it cannot be a superior mechanism for adjudicating this case to have a miniature class action that moves the ball 10 yards down the field and says, good luck to individual plaintiffs who want to take the ball the additional 90 yards to the end zone. That cannot satisfy the superiority requirement of Rule 23 B. I don't think, when you lack a common injury, that you satisfy commonality or predominance, either, under the Supreme Court's precedence. Can I ask just a very quick clarifying question, because I have to say the size of this record defeated me. Before the district court, which of the issue class arguments did you raise? The ones in your brief? I mean, if I group them as there's no Article III standing, Rule 23 doesn't allow for this fine, a cut on issue classes, and it's not superior. Were all three of those issues in front of the district? You argued all three of those issues in front of the district court? Yes, we did, Your Honor. I do think, one thing that became clear, though, is when plaintiffs moved for class action, he ruled on them. He did not rule on all of them. So you're here without, you don't have a ruling to appeal from? We definitely do, Your Honor. What do you mean, you didn't rule on them? He ruled on the appropriate appropriateness of class treatment of these particular issues. But when plaintiffs moved to certify their case, they moved to certify liability only. And then the district court sort of saw it as a carving knife and started carving off some issues. But you did make the argument before the district court, putting to one side Article III and putting to one side for a minute, superiority. Just Rule 23 does not allow for a class on elements that fall short of full liability. That's correct, Your Honor. And we said, look, when there's not a common injury, you can't have a class action of any kind, whether you look at Rule 23a, b, or c. For those reasons, I would ask that the court reverse. Thank you. Thank you.
judges: Paul V. Niemeyer, Robert B. King, Pamela A. Harris